IN THE UNITED STATES DISTRICT COURT OF
THE SOUTHERN DISTRICT OF FLORIDA
(FORT LAUDERDALE DIVISION)

BERKLEY VACATION RESORTS, INC.,       CASE NO.:
ELDORADO RESORTS CORP., LANDO
RESORTS CORPORATION, WILLIAMSBURG
PLANTATION, INC., PALM BEACH RESORT
DEVELOPMENT GROUP, LLC, PATRIOT
SUITES, INC., VACATION VILLAGE AT
PARKWAY OWNERS ASSOCIATION, INC.,
GRANDVIEW AT LAS VEGAS OWNERS'
ASSOCIATION, INC., THE CLIFFS AT PEACE
CANYON OWNERS ASSOCIATION,
WILLIAMSBURG PLANTATION OWNERS
ASSOCIATION, MIZNER PLACE AT WESTON
TOWN CENTER OWNERS ASSOCIATION, INC.,
PALM BEACH SHORES RESORT AND
VACATION VILLAS ASSOCIATION, INC.,
BERKSHIRE MOUNTAIN LODGE OWNERS
ASSOCIATION, INC., THE COLONIES OWNERS
ASSOCIATION, VACATION VILLAGE AT
BONAVENTURE OWNERS ASSOCIATION,
INC. and VACATION VILLAGE AT WESTON
OWNERS ASSOCIATION, INC.,

           Plaintiffs,

vs.

MITCHELL REED SUSSMAN, an individual,

           Defendant.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, BERKLEY VACATION RESORTS, INC., ELDORADO RESORTS

CORP., LANDO RESORTS CORPORATION, WILLIAMSBURG PLANTATION,

INC., PALM BEACH RESORT DEVELOPMENT GROUP, LLC, PATRIOT SUITES,

INC., VACATION VILLAGE AT PARKWAY OWNERS ASSOCIATION, INC.,

GRANDVIEW AT LAS VEGAS OWNERS' ASSOCIATION, INC., WILLIAMSBURG PLANTATION OWNERS ASSOCIATION, MIZNER PLACE AT WESTON TOWN CENTER OWNERS ASSOCIATION, INC., PALM BEACH SHORES RESORT AND VACATION VILLAS ASSOCIATION, INC., BERKSHIRE MOUNTAIN LODGE OWNERS ASSOCIATION, INC., THE COLONIES OWNERS ASSOCIATION, VACATION VILLAGE AT BONAVENTURE OWNERS ASSOCIATION, INC., and VACATION VILLAGE AT WESTON OWNERS ASSOCIATION, INC., (collectively, "Plaintiffs"), file this Complaint against Defendant, MITCHELL REED SUSSMAN ("Sussman"), individually,  and state:

**PARTIES**

A.     **The Developer Plaintiffs**

    1.     BERKLEY VACATION RESORTS, INC. ("BVR") is a Florida corporation with its principal place of business located in Fort Lauderdale, Florida.

    2.     LANDO RESORTS CORPORATION ("Lando") is a Florida corporation with its principal place of business located in Fort Lauderdale, Florida.

    3.     PALM BEACH RESORT DEVELOPMENT GROUP, LLC ("Palm Beach") is a Florida limited liability company with its principal place of business located in Fort Lauderdale, Florida.  Its sole member is Palm Beach Resorts Holdings, Inc., which is a citizen of the state of Florida having its principal place of business in Fort Lauderdale, Florida.

    4.     ELDORADO RESORTS CORP. ("Eldorado") is a Florida corporation with its principal place of business located in Fort Lauderdale, FL.

2

*Berkley Vacation Resorts, Inc, et. al. v. Mitchell Reed Sussman*
Complaint for Damages and Injunctive Relief

5.      PATRIOT SUITES, INC. ("Patriot") is a Florida corporation with its principal place of business located in Fort Lauderdale, Florida.

6.      WILLIAMSBURG PLANTATION, INC. ("WPI") is a Virginia corporation with its principal place of business located in Williamsburg, Virginia.

**B.      The Association Plaintiffs**

7.      MIZNER PLACE AT WESTON TOWN CENTER OWNERS ASSOCIATION, INC. ("Mizner Place") is a Florida corporation with its principal place of business located in Fort Lauderdale, Florida.

8.      VACATION VILLAGE AT BONAVENTURE OWNERS ASSOCIATION, INC. ("VV at Bonaventure") is a Florida corporation with its principal place of business located in Fort Lauderdale, Florida.

9.      VACATION VILLAGE AT WESTON OWNERS ASSOCIATION, INC. ("VV at Weston") is a Florida corporation with its principal place of business located in Fort Lauderdale, Florida.

10.      VACATION VILLAGE AT PARKWAY OWNERS ASSOCIATION, INC. ("VV at Parkway") is a Florida corporation with its principal place of business located in Orlando, Florida.

11.      PALM BEACH SHORES RESORT AND VACATION VILLAS ASSOCIATION, INC. ("PB Shores") is a Florida corporation with its principal place of business located in Palm Beach Shores, Florida.

3

12.    GRANDVIEW AT LAS VEGAS OWNERS' ASSOCIATION, INC. ("Grandview") is a Nevada corporation with its principal place of business located in Las Vegas, Nevada.

13.    THE CLIFFS AT PEACE CANYON OWNERS ASSOCIATION ("Peace Canyon") is a Nevada corporation with its principal place of business located in Las Vegas, Nevada.

14.    WILLIAMSBURG    PLANTATION    OWNERS    ASSOCIATION Williamsburg") is a Virginia corporation with its principal place of business located in Williamsburg, Virginia.

15.    THE COLONIES OWNERS ASSOCIATION ("Colonies") is a Virginia corporation with its principal place of business located in Williamsburg, Virginia.

16.    BERKSHIRE MOUNTAIN LODGE OWNERS ASSOCIATION, INC. INC., ("Berkshire") is a Massachusetts corporation with its principal place of business located in Pittsfield, Massachusetts.

**C.    The Defendant**

17.    Sussman is an individual domiciled in Palm Springs, Riverside County, California, and is a citizen of California. Sussman is an attorney who is licensed to practice in the State of California and operates a law firm named The Law Offices of Mitchell Reed Sussman & Associates ("Sussman Law").

## JURISDICTION

18.    This Court has jurisdiction over this dispute by virtue of 28 U.S.C. § 1332 in that there is complete diversity of citizenship between all Plaintiffs and Sussman in this

4

matter and  the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

19.    This Court may exercise personal jurisdiction over Sussman because this action arises out of and is related to Sussman's purposeful contacts with the State of Florida, including (i) the solicitation of Florida owners through the use of false and deceptive advertising, (ii) the inducement of Florida attorneys such as the Young Law Firm of Florida, LLC ("Young Law Firm") through false representations, to prepare and record fraudulent deeds on Sussman's behalf in Florida, (iii) the intentional interference with contracts between Plaintiffs, the majority of which have their principal places of business located in Broward County, Florida, and individuals who purchased timeshare interests from Plaintiffs, (iv) the intentional interference with contractual and advantageous business relationships between Plaintiffs and Florida residents, and (v) the intentional interference with contractual and advantageous business relationships between Plaintiffs and owners with timeshare interests located in Florida.

20.    Specifically, Sussman solicits, via postings on various websites including for his own law firm, individuals who own timeshare interests with Plaintiffs (many of which are located in Florida), who subsequently retain the services of Sussman (hereinafter "Berkley Owners").   Through false and deceptive advertisements and representations, Sussman lures the Berkley Owners to pay large upfront sums of money to retain his services, and through fraudulent representations, induce Florida (and other) attorneys, such as the Young Law Firm, to prepare and record fraudulent deeds in Florida

5

on Sussman's behalf.  These fraudulent deeds are then provided to the Berkley Owners as Sussman's "Proof of Performance," which underlie Plaintiffs' claims.

21.     Sussman also entered agreements with the Berkley Owners, many of whom own timeshare interests in Florida or who have contracts with Plaintiffs located in Florida.  Sussman was to perform the contracts, in whole or in part, in Florida, in that Sussman was to negotiate with Plaintiffs to procure the release of future obligations the Berkley Owners owed to Plaintiffs and the cancellation of the Berkley Owners' contracts with Plaintiffs.  To effect the cancellation, Sussman mailed letters to Plaintiffs in Florida.

22.     Should the negotiation with Plaintiffs fail, Sussman would secure the services of Florida attorneys, through deceptive means, to prepare and record fraudulent deeds on Sussman's behalf in Florida, which are then provided to the Berkley Owners as Sussman's "Proof of Performance" with a letter accompanying the deed congratulating the Berkley Owner and (falsely) advising that the timeshare interests are no longer in their name and therefore they are relieved from any further contractual obligations owed to Plaintiffs.

23.     The Court's exercise of personal jurisdiction over Sussman will not violate traditional notions of fair play and substantial justice.

## VENUE

24.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391, because as described above and below, a substantial part of the events giving rise to Plaintiffs' claims occurred in Broward County, Florida, a substantial number of Plaintiffs' timeshare resort properties are located in this District, and Sussman's conduct

6

giving rise to the claims occurred in and/or caused damage to Plaintiffs in Broward County, Florida.

**GENERAL ALLEGATIONS**

**D.**     **The Timeshare Purchase**

25.     The Developer Plaintiffs are developers of timeshare resort properties throughout the United States, five (5) of which are located in Florida, with four (4) in this District.  The Developer Plaintiffs' timeshare resorts have been in operation for many years and they have developed a considerable base of owners who own timeshare interests at the Developer Plaintiffs' various resorts.

26.     The Association Plaintiffs are the owners' associations and managing entities for the Developer Plaintiffs' timeshare resort properties throughout the United States. When timeshare owners purchase timeshares from the Developer Plaintiffs, the owners execute Contracts for Purchase and Sale ("Purchase Agreements") wherein the owners agree to pay maintenance fees to the Association Plaintiffs for the upkeep of the timeshare units and common areas of the timeshare properties and the management of the resorts. In addition, the owners agree to pay a pro-rated share of the real property taxes to the Association Plaintiffs which monies are then submitted by the Association Plaintiffs to the local tax collectors.

27.     If a purchaser desires mortgage financing, he or she may complete and submit a mortgage application as part of the Purchase Agreement; and upon approval of financing to be provided by the Developer Plaintiff, a purchaser will execute and deliver

7

a Promissory Note and Mortgage in connection with the timeshare purchase.  Developer Plaintiffs are the lender and holder of the Promissory Note and Mortgage.

28.     Plaintiffs actively and aggressively protect their proprietary business practices and processes and their brand. They devote substantial resources to advertising and other marketing promotions to increase the visibility and recognitions of their proprietary products and to maintain and enhance the value of their brand. Plaintiffs compete directly with other developers and marketers of vacation and travel products and services who target similar consumers. The good will associated with Plaintiffs' brands and their products and services are essential to Plaintiffs' ability to effectively compete in a highly competitive marketplace.

**E.      Sussman's Scheme To Solicit Timeshare Owners Through The Use Of False And Misleading Advertising**

29.     Sussman engages in a scheme whereby he specifically seeks out and solicits timeshare owners having a timeshare interest with Plaintiffs with an existing Purchase Agreement and loan in favor of Developer Plaintiffs, or are otherwise under a contractual obligation to make payments to the Association Plaintiffs for maintenance fees and taxes.

30.     Sussman's business model consists of soliciting timeshare owners from all over the country, including Berkley Owners, through Sussman's website for his law firm, http://timesharelegalaction.com;  through  various  postings  on  websites  such  as

https://www.youtube.com, https://www.facebook.com, and https://www.newswire.com; and through referrals from third party timeshare exit companies.[1]

31.     In order to induce Berkley Owners to retain Sussman's legal services, Sussman advertises that he specializes in "timeshare exit, cancellation and relief for embattled timeshare owners [who are] no longer interested in paying the ever escalating fees that are associated with timeshare ownership" and offers a "100% MONEY BACK GUARANTEE." *See* **Exhibit "A."**

32.     Sussman's website boasts that timeshare owners can cancel their contracts even if they have mortgages because "[t]echniques pioneered by the timeshare consumer advocates from the law office of Mitchell Reed Sussman & Associates have emerged in recent years that have resulted in timeshare companies becoming more agreeable to releasing timeshare owners from their timeshare obligations." *See* **Exhibit "B."** However, the so called "technique" pioneered by Sussman is nothing more than a fraudulent scheme wherein Sussman instructs timeshare owners, including Berkley Owners, to execute fraudulent deeds prepared by or on behalf of Sussman with the false promise that the execution and recording of the deed relieves the timeshare owner of any further contractual obligations owed in relation thereto.  But this is false because the fraudulent deeds not only fail to accomplish any promised cancellations but also result in the Berkley Owners' defaulting on their financial obligations to Plaintiffs.

---

1.     For the purposes of this complaint, the terms "timeshare exit compan[ies]" or "timeshare exit industry" refer to companies or individuals who solicit timeshare owners with promises to procure the termination of the timeshare owners' obligation to pay on their promissory note and purchase agreement.

33.     Sussman's website also contains letters from various timeshare entities, including Plaintiffs, as part of his "Proof of Performance" in order to advertise that Sussman has successfully obtained timeshare contract cancellations and can continue to do so, when in fact the cancellations were obtained without any involvement from Sussman whatsoever.

34.     Sussman further posts on Sussman Law's Facebook page ("Facebook Page") that "[t]o date we have cancelled 10,000+ timeshares for disgruntled owners no longer interested in the burdens of timeshare ownership." ***See* Exhibit "C."** Sussman provides the service for "the all-inclusive fee [of] $950." *Id.* Under the posting of a sample cancellation letter from another timeshare developer targeted by Sussman, Sussman directs visitors to the Facebook Page to visit Sussman Law's website, www.timesharelegalaction.com, where "you will see proofs of performance from virtually every timeshare company on the face of this planet." ***See* Exhibit "D."**

35.     The postings from the various websites strongly suggest that Sussman can obtains the same result for other timeshare owners, regardless of whether there is any legitimate legal basis for the cancellation. *See e.g.*, **Exhibit "E,"** in response to an inquiry regarding cancellation of timeshares owned by deceased parents, without inquiring further regarding the specific facts of the case, Sussman responds, "Easy . . . we can make this go away. Cal [sic] the office and ask for Steve or Jeff." Upon information and belief, Steve and Jeff are not attorneys but merely case managers.

36.     Upon information and belief, Sussman continuously violates Florida and other State's Bar Rules prohibiting, among other things, misleading and incomplete

*Berkley Vacation Resorts, Inc, et. al. v. Mitchell Reed Sussman*
Complaint for Damages and Injunctive Relief

advertising and the unlicensed practice of law, by using timeshare exit companies to directly solicit/contact timeshare owners to convince the timeshare owners to retain their services and subsequently refer the timeshare owners to Sussman in return for a fee paid by Sussman.

37.     However, Sussman's advertising and promises to owners are false. Sussman's use of false and misleading advertising to sell his services, and then deceptive and unfair trade practices once he has been retained, have played a material and substantial part in inducing Berkley Owners to cease making payments to Plaintiffs in contravention of the legally enforceable contracts between the Berkley Owners and the Plaintiffs.

**F.      Sussman's Encouragement Of The Berkley Owners To Immediately Default On All Payment Obligations Related To Their Timeshare Interest**

38.     In order to entice Berkley Owners to sign the retainer agreement with Sussman, he directs the Berkley Owners to stop paying: (1) maintenance fees and property taxes to the Association Plaintiffs as required by the Purchase Agreements; and (2) amounts owed to the Developer Plaintiffs as required by the Promissory Notes. This instruction is made without any prompting from the timeshare owners, without reviewing the timeshare owners' Purchase Agreements, Notes, or Mortgages, or otherwise conducting any investigation, and without the timeshare owners informing Sussman of any legal defenses they may have. Sussman's staff further reiterates the direction to cease making payments in follow-up communications with the Berkley Owners in order to further induce them to retain Sussman and pay the large upfront retainer fees.

ACTIVE: 31345437.7-03185.0544

39.    Sussman falsely assures the timeshare owners that, despite breaching their legally binding agreements with timeshare developers and associations such as Plaintiffs, the timeshare owners will not be responsible for any missed note payments or maintenance fees and will be able to walk away free and clear as their legal services are designed to release the timeshare owners from any future obligations.

40.    According to Sussman and his solicitations, Sussman will not only be able get the timeshare developers and associations to take back the deed, but they will also forgive the remaining loan balances and maintenance fees and taxes.  Sussman backs this promise with a 100% money-back guarantee, but these representations and "promises" by Sussman are false.

41.    Sussman informs the potential timeshare owner clients that the process will take about 6-12 months and their credit score will only drop about 50-75 points temporarily, which may be resolved by the potential client reaching out to the credit bureaus and providing the credit bureaus with the letters they will be sending the timeshare developers and associations, such as Plaintiffs.

42.    These assurances, along with the advertisements discussed above, were false.  They were material misrepresentations made by Sussman with the knowledge they were false, for the purpose of inducing Berkley Owners to retain Sussman and pay him large upfront sums of money.

43.    The Berkley Owners relied upon these false and deceptive representations, only to have Plaintiffs not cancel any contracts and not forgive the debt.  The ultimate

goal of Sussman's overall fraudulent and deceptive scheme was to harm Plaintiffs for Sussman's own pecuniary benefit.

44.    Sussman knew these representations were false because Plaintiffs rarely, if ever, responded to the hundreds of Sussman's fraudulent form letters received.   But Sussman's conduct continued nonetheless.

### G.    Sussman's Continued Deceptive Conduct After Being Retained by Berkley Owners To Cause Further Harm to Plaintiffs

45.    After obtaining a Berkley Owner as a client, Sussman sends Plaintiffs form letters on the Sussman Law letterhead.  *See* **Composite Exhibit "F."**  These form letters: (1) generically reference "claims of fraud and misrepresentation in connection with the time-share presentation and sale;" (2) inform Plaintiffs that their client "will no longer be making any payments on the timeshare including any future or past due maintenance assessments;" and (3) cite to irrelevant law such as California's Fair Debt Collection Practices Act.

46.    Sussman sends these pre-drafted form letters on behalf of Berkley Owners without conducting any investigation of the Berkley Owner's case or otherwise informing the Berkley Owners that Sussman is pursuing such a claim on their behalf. In most, if not all instances, Sussman never even speaks with the Berkley Owners after he has been retained.

47.    At the time Sussman collects his advance paid retainer fee from the Berkley Owners and sends the form demand letters, Sussman knows the Berkley Owners have enforceable contractual relationships with Plaintiffs.

48.     Sussman is fully aware the Berkley Owners have no valid grounds to terminate their contractual relationships with Plaintiffs; so instead, Sussman makes false statements and/or allegations against Plaintiffs, without even informing the Berkley Owners of his intention to make the false statements and/or allegations.

49.     On the Sussman Law website, as Sussman's "Proof of Performance," Sussman posts letters from various timeshare developers and/or owners' associations, including Plaintiffs, purporting to demonstrate how Sussman has successfully negotiated cancellations for his clients, "To see our successes, click on any of the links from this page and you will see examples of contract cancellations, the result of which was the release of former timeshare owners from their lifetime obligation to pay."  However, these letters are deceptive since, in many instances, the cancellations were negotiated without any involvement from Sussman whatsoever, were obtained prior to the developers and associations becoming aware of Sussman's fraudulent scheme or were otherwise obtained through the use of fraudulent deeds.  As a result, the letters are misleading and falsely portray that Sussman is able to successfully obtain cancellations for his clients, including with Plaintiffs, when in fact, Plaintiffs and other timeshare developers have not agreed to any cancellations with Sussman at all or have otherwise refused to agree to any cancellations with Sussman in several years.  *See* **Exhibit "B."**

50.     When Sussman is unsuccessful in obtaining the guaranteed cancellation of the timeshare contracts from Plaintiffs, as promised, and to ensure that Sussman keeps the large upfront fees paid by his clients, Sussman has his clients execute unilateral deeds, which were not requested, authorized or accepted by Plaintiffs, purporting to

transfer the Berkley Owners' respective timeshare interests back to Plaintiffs or to an individual serving as a straw owner (who in some instances is one of Sussman's employees), as evidence that the matter has been resolved and the Berkley Owners have been relieved from their contractual obligations to Plaintiffs.

51.     However, Sussman never provides copies of the fraudulent deeds to Plaintiffs or otherwise provides any notice to Plaintiffs that the Berkley Owners are executing these deeds.  The only way Plaintiffs learn of one of Sussman's fraudulent deeds - if ever - is from the Berkley Owners, which are occasionally sent to Plaintiffs in response to the Berkley Owners' receipt of a billing statement for maintenance and/or mortgage payments.  *See e.g.* **Exhibits "G"** and "**H**," letters from Berkley Owners informing Plaintiffs that "I am no longer the owner of this timeshare [based upon the fraudulent deed] and I refuse to pay anything more."

52.     The letters further provide that "If you feel you need to contact anybody in regards to me previously being the owner, you can contact my attorney Mitchell Reed Sussman…."  Other Berkley Owners simply send Plaintiffs a copy of the letter received from Sussman congratulating the Berkley Owner and stating, "[s]ince you are no longer the owner, you are not responsible for future fees in connection with your timeshare." *See* **Exhibit "I."** Sussman's representations, however, were completely false – Sussman did not transfer lawful title and thus, the Berkley Owners are still the owners of the timeshare properties and remain responsible for the contractual obligations owed in relation thereto.

53.     Once Plaintiffs were made of aware of one of Sussman's fraudulent transfers, Plaintiffs would send a letter to the Berkley Owners enclosing a copy of a

recorded deed transferring title back to the Berkley Owners and explaining that, "In order to effectively transfer title to a property the grantee must accept delivery of the deed and the property.  Developer never approved the transfer or accepted delivery of the Deed and the property.  Therefore, the recorded Deed did not transfer ownership of your Timeshare Interval back to the Developer. Thus you continue to own the Timeshare Interval and remain liable for all ownership obligations."  *See* **Exhibit "J,"** letter sent to owner in response to receipt of deed prepared by Andre Young on behalf of Sussman.

54.     Not surprisingly, and in furtherance of Sussman's fraudulent scheme, Sussman would respond with another letter advising that his client "[D]isavows the transfer and does not accept it nor does our client wish to be part of your time-share organization.  Please be further advised that as a matter of law, acceptance by the grantee requires that the grantee have an intention to take legal title to the property.  Our client has no such intention. Should you dispute this question of fact, you are free to seek a declaration of rights in an appropriate court of law."  *See* **Exhibit "K**."

55.     As a result, Plaintiffs resorted to recording Notices of Non-Acceptance if and when they are made aware of the fraudulent deeds, and providing a copy to Sussman and/or the Berkley Owners with a letter advising that the fraudulent deed was neither accepted nor authorized and therefore "is of no legal effect."  *See* **Exhibit** "**L**."

56.     Unsurprisingly, Sussman continues to respond with the same form letter in an attempt to "disavow" the transfer and referring to "your recently recorded deed to the above – name clients," despite the fact that no deed has been recorded since it was a

Notice of Non-Acceptance, and reiterating that Plaintiffs should "seek a declaration of rights in an appropriate court of law."  *See* **Exhibit** "**M**."

57.    So notwithstanding that Plaintiffs NEVER accepted nor authorized nor approved the fraudulent transfers performed by Sussman on behalf of his clients, thereby making them legally invalid, in typical scammer fashion Sussman engages in a game of "hot potato" and improperly places the burden on Plaintiffs to seek relief through the courts, all the while knowing his initial fraudulent transfer is invalid for the exact same reasons stated in his letters to Plaintiffs.

58.    Sussman continues to engage in the same fraudulent conduct despite being placed on notice and with the knowledge that Plaintiffs have neither authorized nor accepted the fraudulent transfers, and continues to take money from unsuspecting owners with the knowledge that he cannot obtain the promised relief for the Berkley Owners - releases from their contractual obligations to Plaintiffs - through the use of fraudulent deeds.  But Sussman's fraudulent conduct continues nonetheless.

59.    In furtherance of Sussman's deceptive scheme, he solicits attorneys to prepare, review and/or record the fraudulent deeds on Sussman's behalf.  *See* **Exhibit "N."** These deeds purport to transfer the timeshare interest back to Plaintiffs with Plaintiffs' consent, or to a straw owner, citing "$10.00," and in some instances "$500.00," consideration paid by Plaintiffs to Sussman's clients, and Sussman's clients' acknowledging receipt thereof, but this was completely false because the deeds were prepared and recorded unilaterally without Plaintiffs' knowledge, authorization or acceptance.  On occasion, the fraudulent deeds purport to transfer title to a straw owner –

17

who in some instances is one of Sussman's employees - who never intends or intended to actually own the timeshare and never intends or intended to satisfy the payment and other obligations of ownership.  *See* **Exhibit "G,"** deeding timeshare to Jose Alex Gomez. All of these actions were unbeknownst to the Berkley Owners and the Plaintiffs.

60.     The attorneys were induced to prepare and record the deeds on Sussman's or his clients' behalf based upon Sussman's representation that "the Timeshare Corporations had accepted the return transfer of ownership interest prior to [Sussman's] office requesting deeds to be drafted and recorded by [the Young Law Firm's] office." *See* **Exhibit "O,"** letter dated April 11, 2017, from the Young Law Firm to Sussman's clients.  However, that was not true.   The timeshare developers and associations, such as Plaintiffs, ***had neither requested nor approved nor accepted the return transfer of ownership***, and, importantly, ***knew nothing about Sussman's scheme for Berkley Owners to unilaterally deed timeshare interests back to the timeshare developers or to a straw owner.***  Upon being notified by Plaintiffs that Sussman was not telling the truth and that Plaintiffs did not authorize, approve or accept the return transfer of ownership, the Young Law Firm determined that it had an "ethical obligation" to inform Sussman's clients, on whose behalf the Young Law Firm acted, of the invalid deeds and the owners' continued liability for "assessments, fees, potential foreclosure costs, and attorney's fees." *Id.*

61.     At the time Sussman made the representations to the Young Law Firm regarding Plaintiffs' acceptance of the deed and the consideration paid for the transfer of title to the timeshare interests, Sussman knew the representations were false, as Sussman

18

never asked for, nor received, any approval from Plaintiffs to transfer the timeshare interest, nor did Plaintiffs provide the consideration recited in the deed to Sussman's clients. These material misrepresentations were made with the intent that the Young Law Firm, and other attorneys, would rely upon them to review, prepare and/or record the fraudulent deeds on Sussman's behalf.

62.     As a result of the false representations made by Sussman to the Berkley Owners that upon execution and recording the deeds the Berkley Owners would be relieved from any further financial obligations to Plaintiffs, the Berkley Owners were further induced to continue breaching their contractual obligations to Plaintiffs causing continued harm to Plaintiffs.

63.     However, the fraudulent deeds, as described above, prepared and recorded by the Young Law Firm and other attorneys,  were not effective in relieving the Berkley Owners' obligations to pay maintenance fees and taxes to the Association Plaintiffs and payments due on the Notes to the Developer Plaintiffs.

64.     But for Sussman's false and deceptive advertising and representations, compelling the Berkley Owners to retain Sussman's services and pay the upfront fees with the false promise that Sussman would be able obtain cancellations of the Berkley Owners' contracts and have their debts forgiven, the Berkley Owners would not have breached or otherwise sought to cancel their contractual obligations with Plaintiffs.

65.     Additionally, but for Sussman's preparation and recording of the fraudulent deeds and false representations, the Berkley Owners would not have continued to breach their contractual obligations with Plaintiffs.  *See* **Exhibits "G" and "H,"** letters

from Berkley Owners relying on the fraudulent deeds as basis for refusing to pay Plaintiffs.

66.     Shortly after Sussman sends his form letters to Plaintiffs, most, if not all, of the Berkley Owners, at the direction of Sussman, stopped paying their legitimate and enforceable contractual obligations to Plaintiffs.

67.     Sussman intentionally and unjustifiably interfered with Plaintiffs' contractual relationships with the Berkley Owners. Upon information and belief, Sussman, as a condition of representation, compels the Berkley Owners to breach their contractual relationships without any valid grounds and without conducting any meaningful investigation to ascertain if there are, even hypothetically, grounds to avoid the timeshare purchase contract.  The timeshare owners relied upon Sussman's false assurance that there will be no liability because Sussman is involved.  Sussman's actions were aimed at causing harm to Plaintiffs and to further Sussman's own pecuniary benefit.

68.     After the Berkley Owners retain Sussman, he assures the Berkley Owners that the matter has been resolved and their contracts with Plaintiffs have been cancelled. Sussman accomplishes this by, among other things, providing the Berkley Owners with a fraudulent deed purporting to transfer the timeshare interest back to Plaintiffs or to a straw owner.  Sussman's actions give the Berkley Owners the false impression that they have been relieved of their contractual obligations.  According to the false representations made by Sussman, the mere recording of the fraudulent deed relieves the Berkley Owners of liability for payments owed to Plaintiffs.

69.     Even though these fraudulent advertisements and representations were directed at the Berkley Owners, the ultimate party injured by these false and misleading advertisements and misrepresentations are Plaintiffs, as the Berkley Owners' reliance on Sussman's misrepresentations and deception has resulted in the Berkley Owners breaching valid contractual agreements with Plaintiffs.  The resultant harm to Plaintiffs was, by design, Sussman's ultimate intention.

70.     As a direct and proximate result of Sussman's intentional and unjustified interference with Plaintiffs' contractual and advantageous business relationships with the Berkley Owners, Plaintiffs have been damaged.

71.     All conditions precedent to the filing of this action have been satisfied, waived, or have occurred.

72.     Plaintiffs have retained the law firm of Greenspoon Marder LLP to represent them in this action and are obligated to pay reasonable attorney's fees and costs incurred herein.

## COUNT I
### (TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS)

73.     Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 72 above as if more fully set forth herein.

74.     This is a cause of action for tortious interference with existing contracts and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

75.     Plaintiffs have valid and legally enforceable contracts with Berkley Owners relating to the Berkley Owners' timeshare units.

21

76.    As outlined above, Sussman has knowledge of those relationships.  The very fact that Plaintiffs have contracts with the Berkley Owners is the basis under which Sussman sought to establish a relationship with the Berkley Owners.

77.    Sussman capitalizes on Plaintiffs' contractual relationships with the Berkley Owners by: (1) soliciting the Berkley Owners through false and misleading advertising; (2) fraudulently inducing the Berkley Owners to pay large upfront fees to Sussman instead of making their legally due and owing payments to the Plaintiffs; (3) fraudulently inducing the Berkley Owners to cease making payments to Plaintiffs in contravention of the legally enforceable contracts between the Berkley Owners and the Plaintiffs; (4) securing the services of other attorneys to review, prepare and record fraudulent deeds with the knowledge that Plaintiffs have not and will not accept the transfers and cannot obtain the promised relief; and (5) sending letters to the Berkley Owners enclosing the recorded fraudulent deeds and falsely advising that the Berkley Owners no longer own the timeshare and therefore they are relieved from any further contractual obligations owed to Plaintiffs.

78.    Sussman's willful and fraudulent actions to induce parties with whom Plaintiffs have valid contractual agreements to breach their agreements constitute intentional interference with existing contracts.

79.    Sussman has intentionally and without justification or privilege, and through fraudulent means, interfered with Plaintiffs' existing contracts by compelling Berkley Owners to immediately stop making any further payments under their contracts

without any legal basis; and by inducing other attorneys to review, prepare and record fraudulent deeds on Sussman's behalf to cause further breach of the existing contracts.

80.     Sussman's actions were not made in good faith, but were made for purely selfish and mercenary reasons so as to earn and retain the large pre-paid retainer fee without actually providing any meaningful services to the Berkley Owners and were made with the knowledge and purpose to injure Plaintiffs or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from Sussman's actions and without reasonable grounds for Sussman to believe that his actions were justified and proper.

81.     As a direct and proximate result of Sussman's intentional misconduct, Berkley Owners have breached, or have otherwise sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

82.     As a direct and proximate result of the foregoing, Plaintiffs suffered damages, and if Sussman's conduct is not enjoined, will continue to suffer injury for which relief at law is inadequate.

**WHEREFORE**, Plaintiffs respectfully demand judgment in their favor and against Defendant, MITCHELL REED SUSSMAN, and request compensatory damages, special damages, punitive damages, injunctive relief, interest, attorneys' fees and costs, and such additional and further relief this Court deems just and proper.

*Berkley Vacation Resorts, Inc, et. al. v. Mitchell Reed Sussman*
Complaint for Damages and Injunctive Relief

## COUNT II
## (TORTIOUS INTERFERENCE WITH
## ADVANTAGEOUS BUSINESS RELATIONSHIPS)

83.     Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 72 above as if more fully set forth herein.

84.     This is a cause of action for tortious interference with advantageous business relationships and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

85.     Plaintiffs not only have advantageous business relationships with the Berkley Owners pursuant to their contracts, but Plaintiffs also have real and legitimate business relationships with the Berkley Owners for future business.  Berkley Owners having existing contracts with Plaintiffs have equity interests which may be used as credits towards the purchase of an upgraded timeshare interest.  Examples of these upgrades include a larger unit, a more premium season or a change of resort location, all of which are advantageous business relationships.  Many of the Berkley Owners take advantage of these equity interests to upgrade their timeshare interests.

86.     Sussman has knowledge of these advantageous business relationships. The very fact that Plaintiffs have a business relationship with the Berkley Owners is the basis under which Sussman sought to establish a relationship with the Berkley Owners.

87.     Sussman sought to capitalize on Plaintiffs' business relationships with the Berkley Owners by soliciting the Berkley Owners through false and misleading advertising, fraudulently inducing them to pay large upfront fees to Sussman, and fraudulently inducing them to stop making payments to Plaintiffs in contravention of

24

legally enforceable contracts thereby terminating any current and future advantageous business relationships Plaintiffs have with the Berkley Owners.  To seal the deal and ensure the Berkley Owners not contact Sussman to request their money back pursuant to the 100% money back guarantee, Sussman secures the services of other attorneys such as the Young Law Firm to review, prepare and record fraudulent deeds for Sussman to provide to the Berkley Owners as "Proof of Performance."

88.     Sussman's willful and fraudulent actions to induce parties with whom Plaintiffs have valid advantageous business relationships to breach existing contractual agreements foreclose on any current and future advantageous business relationship Plaintiffs may have with the Berkley Owners, and therefore, constitute intentional interference with existing advantageous business relationships.

89.     Sussman has intentionally and without justification or privilege, and through fraudulent means, interfered with Plaintiffs' existing and future advantageous business relationships by inducing Berkley Owners to immediately terminate any business relationships with Plaintiffs; and by inducing other attorneys to review and record fraudulent deeds on Sussman's behalf with the false representation that the mere recording of the deed terminates the relationship and any financial obligations owed in relation thereto, to further interfere with Plaintiffs' advantageous business relationships with the Berkley Owners.

90.     Sussman's actions were not made in good faith, but were made for purely selfish and mercenary reasons so as to earn and retain the large pre-paid retainer fee without actually providing any meaningful services to the Berkley Owners and were with

the knowledge and ultimate purpose to injure Plaintiffs or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from their actions and without reasonable grounds for them to believe that their actions were justified and proper.

91.     As a direct and proximate result of Sussman's intentional misconduct, Berkley Owners have breached, or have sought to terminate, their existing contracts with Plaintiffs and any advantageous business relationships with Plaintiffs.   Sussman's conduct has further resulted in the Berkley Owners' continued breach of their contractual obligation to Plaintiffs and therefore, foreclosed on any future and continued advantageous business relationships Plaintiffs may have with the Berkley Owners.

92.     As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against Defendants, MITCHELL REED SUSSMAN, and request compensatory damages, special damages, injunctive relief, interest, attorneys' fees and costs, punitive damages, and such additional and further relief this Court deems just and proper.

## COUNT III
### (VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §501.201, *et seq.*)

93.     BVR, Lando, Palm Beach, Eldorado, Mizner Place, VV at Bonaventure, VV at Weston, VV at  Parkway and PB Shores (hereinafter the "FDUTPA Plaintiffs") reallege and reincorporate the allegations contained in paragraphs 1 through 72 above as if more fully set forth herein

ACTIVE: 31345437.7-03185.0544

94.     This is a cause of action for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* ("FDUTPA"), against Sussman, including unfair methods of competition, unconscionable acts and practices, and unfair and deceptive practices in the conduct of trade or commerce.

95.     Sussman is engaged in "trade or commerce" as defined by Fla. Stat. §501.203(8), Florida Statutes.

96.     The FDUTPA Plaintiffs are "interested part[ies] or person[s]" as defined by Section 501.203(6), Florida Statutes.

97.     A temporary injunction is a viable form of relief in a FDUPTA claim such as this one.

98.     Sussman engages in unfair competition, unconscionable acts and practices, and unfair and deceptive acts and practices.

99.     Sussman purposefully inserts himself into the same marketplace in which Plaintiffs operate – the timeshare industry consisting of existing and prospective timeshare owners.  Sussman's false and misleading advertisements are directed both to the FDUTPA Plaintiffs' existing client base and to prospective owners.

100.    Sussman advertises to the FDUTPA Plaintiffs' existing client base in order to persuade them to do business with Sussman instead of with Plaintiffs, and to divert monies due and owing to the FDUTPA Plaintiffs instead to Sussman.  As to prospective owners, Sussman's advertising pollutes the marketplace and discourages prospective owners from seeking to do business with FDUTPA Plaintiffs.

*Berkley Vacation Resorts, Inc, et. al. v. Mitchell Reed Sussman*
Complaint for Damages and Injunctive Relief

101.    Accordingly, Sussman is in direct competition with the FDUTPA Plaintiffs.

102.    Sussman's unfair competition, unconscionable acts and practices, and unfair and deceptive acts and practices, include the following:

   a.    Sussman has solicited Berkley Owners through false and misleading advertising and subsequently induces the Berkley Owners to unilaterally breach their contracts without any factual or legal basis or reason whatsoever, and falsely induces them to stop making payments to the FDUTPA Plaintiffs even though such payments are required by legally enforceable contracts to which the timeshare owners have no legal excuse or justification not to pay.

   b.    Sussman advertises on his website that he has pioneered a technique which has resulted in "timeshare companies becoming more agreeable to releasing timeshare owners from their timeshare obligations," when in fact the "technique" is nothing more than a fraudulent scheme which fails to accomplish the promised cancellation of  timeshare contracts or the financial obligations owed in relation thereto.

   c.    Sussman advertises on his website that he has cancelled 10,000+ timeshares when in fact the cancellations are not effective because

28

they are based upon the execution and recording of fraudulent deeds.

d. Sussman posts letters on his website in order to show that he has successfully obtained cancellations with timeshare developers and associations, and can continue to do so, when the cancellations were obtained without any involvement from Sussman, were obtained prior to the timeshare entities becoming aware of Sussman's fraudulent scheme or were otherwise obtained through the use of fraudulent deeds.  As a result, the letters are misleading and falsely portray that Sussman is able to successfully obtain cancellations for his clients.

e. Sussman solicits Florida and Nevada attorneys through deceptive means and induces them to review and record fraudulent deeds to provide to Berkley Owners as Proof of Performance with the false advice to the Berkley Owners that the mere execution and recording of such deeds is effective in relieving the Berkley Owners of their contractual obligations to the FDUTPA Plaintiffs.

f. Sussman continues to solicit attorneys to review and record fraudulent deeds on Sussman's behalf -  despite being placed on notice by the FDUTPA Plaintiffs that they have neither accepted nor approved the fraudulent deeds and are therefore not effective in relieving the Berkley Owners of their contractual obligations to the

FDUTPA Plaintiffs - and is misrepresenting to the Berkley Owners regarding the same; and as a result, there is a strong likelihood the FDUTPA Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for Sussman's unfair, deceptive, and fraudulent conduct is inadequate since Sussman continues to engage in such unfair, deceptive and fraudulent behavior.

g.      Sussman further misrepresents to the Berkley Owners that the timeshare matter has been resolved even though it was not, leading the Berkley Owners to falsely believe that they have been relieved of their contractual obligations to make payments to the FDUTPA Plaintiffs.

103.    Sussman knew or should have known that the above statements were false. Sussman intended that the above statements would induce another to rely and act on them, and specifically, consumers such as the Berkley Owners.

104.    Sussman's misrepresentations constitute unfair and deceptive trade practices, in that his conduct offends established public policy, is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers and businesses alike.

105.    Sussman's actions constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation and the known concealment and misrepresentation of material facts, all in violation of FDUTPA.

30

106.     As a result of Sussman's unfair competition, unconscionable acts and practices, and unfair and deceptive acts and practices, as outlined above, the consumer Berkley Owners have been damaged.  The Berkley Owners are falsely led to believe that if they do business with Sussman, the Berkley Owners will be relieved of any further financial obligation to the FDUTPA Plaintiffs.   In reality, the Berkley Owners' outstanding financial obligations place them in default with the FDUTPA Plaintiffs.

107.     As a direct and proximate result of Sussman's unfair competition, unconscionable acts and practices, and unfair and deceptive acts and practices, as outlined above, aimed at consumers in the timeshare marketplace, the FDUTPA Plaintiffs have suffered substantial injury since Sussman's conduct has falsely induced Berkley Owners to stop making payments to the FDUTPA Plaintiffs even though they are required to do so by legally enforceable contracts.  The FDUTPA Plaintiffs have been damaged in the amounts due and owing to them by virtue of the Berkley Owners halting their payment of mortgage, maintenance, and/or tax payments at the instruction of Sussman.

108.     The FDUTPA Plaintiffs have a clear legal right or interest in being free from Sussman's deceptive or unfair advertising and solicitations, as the false statements and representations set forth above have demonstrated specific past and present harm and injury to the FDUTPA Plaintiffs, and will result in continued and future harm and injury to the FDUTPA Plaintiffs if Sussman is not enjoined.

109.     The FDUTPA Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for Sussman's unfair, deceptive, and fraudulent conduct is

inadequate, as Sussman continues to engage in such unfair, deceptive and fraudulent behavior despite being placed on notice that his actions are unlawful and fraudulent, and fail to relieve the Berkley Owners of their contractual obligations to Plaintiffs.

110.    Sussman continues to engage in such false and deceptive advertising and fraudulent representations for the purpose of soliciting the Berkley Owners and inducing them to pay upfront retainer fees with the false representation that the Berkley Owners may unilaterally terminate their obligations with the FDUTPA Plaintiffs without any valid legal basis, and therefore, there is a strong likelihood that the FDUTPA Plaintiffs will suffer irreparable harm on an ongoing basis.   Additionally, Sussman has lulled Berkley Owners into a sense of complacency by informing them that due to the execution and recording of the fraudulent deeds, the Berkley Owners are relieved of any further contractual obligations to the FDUTPA Plaintiffs, leading to continued breach by the Berkley Owners.

111.    The FDUTPA Plaintiffs have suffered substantial harm as a direct and proximate cause of Sussman's deceptive, misleading, and unfair practices.

112.    An injunction serves the public purpose.

113.    As set forth above, Sussman's conduct:

      a.     is likely to mislead and is deceptive;

      b.     is an "unfair" practice because among other things, the false and deceptive advertising and misrepresentations made by Susssman to induce Berkley Owners to retain Sussman and pay large upfront retainer fees and the false representation that the Berkley Owners

have been relieved of any further contractually obligated payments to the FDUTPA Plaintiffs based upon the execution and recording of a fraudulent deed, offend established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious.

114.    As set forth above, Sussman's conduct was and continues to be willful in that violations occurred and continue to occur even though Sussman knows, knew or should have known that his conduct was unfair or deceptive or prohibited by law and caused the actual harm of which the FDUTPA Plaintiffs complain.

115.    Pursuant to Fla. Stat. §§501.211(2) and 501.2105, the FDUTPA Plaintiffs are entitled to damages, attorney's fees, and costs.

**WHEREFORE,** the FDUTPA Plaintiffs respectfully request this Court:

A.    Enter a preliminary injunction finding Defendant, MITCHELL REED SUSSMAN, engaged in false advertising and enjoining Sussman, his directors, officers, shareholders, attorneys, agents, servants, employees, and any other persons in active concert or participation with Sussman be forthwith preliminarily and permanently enjoined from:

a.    Engaging in false and misleading advertising and representations;

b.    Engaging in deceptive and unfair trade practices; and

c.    Engaging attorneys to prepare and record fraudulent deeds on Sussman's behalf.

B.    Enter a permanent injunction after trial in favor of the FDUTPA Plaintiffs and enjoining Defendant, MITCHELL REED SUSSMAN, his directors, officers, shareholders, attorneys, agents, servants, employees, and any other persons in active concert or participation with them from:

a.    Engaging in false and misleading advertising and representations;

b.    Engaging in deceptive or unfair trade practices; and;

c.    Engaging attorneys to prepare and record fraudulent deeds on Sussman's behalf.

C.    Enter an Order that Defendant, MITCHELL REED SUSSMAN, be required to deliver-up (take-down) and destroy all false, misleading, and deceptive material found on the Sussman's website(s) and found in any marketing material or documentation Sussman produced or is using, and record in Florida and Nevada Public Records documentation sufficient to nullify all of the fraudulent deeds recorded on behalf of Berkley Owners;

D.    Enter an Order that Defendant, MITCHELL REED SUSSMAN, be directed to file with this Court and serve on the FDUTPA Plaintiffs within fifteen days after the service of an injunction a report, in writing under oath, setting forth in detail the manner and form in which Sussman has complied with the injunction;

E.    Enter an Order requiring Defendant, MITCHELL REED SUSSMAN, to provide notice of the injunction by posting the Order on his website(s);

ACTIVE: 31345437.7-03185.0544

F.    Enter judgment for the FDUTPA Plaintiffs on this claim against Defendant, MITCHELL REED SUSSMAN, declaring that Sussman violated FDUTPA;

G.    Enter judgment for actual damages for violation of FDUTPA pursuant to Section 501.211(2), Fla. Stat., money damages, punitive damages, and an award of attorneys' fees and costs pursuant to Sections 501.211(2) and 501.2105, Fla. Stat.; and

H.    Enter any and all other appropriate relief as the Court deems just and proper.

### COUNT IV
### (Violation of Nevada Deceptive Trade Practices Act - NRS 598.0903, *et. seq.* and NRS 41.600)

116.    Grandview and Peace Canyon (hereinafter the "NDTPA Plaintiffs") reallege and reincorporate the allegations contained in paragraphs 1 through 72 above as if more fully set forth herein

117.    This is a cause of action for violations of the Nevada Deceptive Trade Practices Act - NRS 598.0903, et. seq. ("NDTPA") and NRS 41.600, against Sussman, including unfair methods of competition, unconscionable acts and practices, unfair and deceptive practices and consumer fraud in the conduct of trade or commerce.

118.    NRS 41.600(1) authorizes a private right of action as it provides "[a]n action may be brought by any person who is a victim of consumer fraud." NRS 41.600(2) explains, in part, that "consumer fraud" means "a deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive."

35

119.    Pursuant to NRS 598.0915(13), "[a] person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she [k]nowingly makes any other false representation in a transaction."

120.    NRS 598.0953 further states that "[e]vidence that a person has engaged in a deceptive trade practice is prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition."

121.    Sussman purposefully inserts himself into the same marketplace in which the NDTPA Plaintiffs operate – the timeshare industry consisting of existing and prospective timeshare owners.   Sussman's false and misleading advertisements are directed both to NDTPA Plaintiffs' existing client base and to prospective owners.

122.    Sussman advertises to the NDTPA Plaintiffs' existing client base in order to persuade them to do business with Sussman instead of with the NDTPA Plaintiffs, and to divert monies due and owing to the NDTPA Plaintiffs instead to Sussman.   As to prospective owners, Sussman's advertising pollutes the marketplace and discourages prospective owners from seeking to do business with the NDTPA Plaintiffs.

123.    Accordingly, Sussman is in direct competition with the NDTPA Plaintiffs.

124.    Sussman's unfair competition, unconscionable acts and practices, and unfair and deceptive acts and practices, include the following:

    a.    Sussman has solicited Berkley Owners through false and misleading advertising and subsequently induces Berkley Owners to unilaterally breach their contracts without any factual or legal basis or reason whatsoever, and falsely induces them to stop

36

making payments to the NDTPA Plaintiffs even though such payments are required by legally enforceable contracts to which the timeshare owners have no legal excuse or justification not to pay.

b.   Sussman advertises on his website that he has pioneered a technique which has resulted in "timeshare companies becoming more agreeable to releasing timeshare owners from their timeshare obligations," when in fact the "technique" is nothing more than a fraudulent scheme which fails to accomplish the promised cancellation of  timeshare contracts or the financial obligations owed in relation thereto.

c.   Sussman advertises on his website that he has cancelled 10,000+ timeshares when in fact the cancellations are not effective because they are based upon the execution and recording of fraudulent deeds.

d.   Sussman posts letters on his website in order to show that he has successfully obtained cancellations with timeshare developers and associations, and can continue to do so, when in fact the cancellations were obtained without any involvement from Sussman, were obtained prior to the timeshare entities becoming aware of Sussman's fraudulent scheme or were otherwise obtained through the use of fraudulent deeds.  As a result, the letters are

*Berkley Vacation Resorts, Inc, et. al. v. Mitchell Reed Sussman*
Complaint for Damages and Injunctive Relief

misleading and falsely portray that Sussman is able to successfully obtain cancellations for his clients.

e.    Sussman solicits attorneys through deceptive means and induces them to review and record fraudulent deeds to provide to Berkley Owners as Proof of Performance with the false advice to the Berkley Owners that the mere execution and recording of such deeds is effective in relieving the Berkley Owners of their contractual obligations to the NDTPA Plaintiffs.

f.    Sussman continues to solicit attorneys to review and record fraudulent deeds on Sussman's behalf -  despite being placed on notice by the NDTPA Plaintiffs that they have neither accepted nor approved the fraudulent deeds and are therefore not effective in relieving the Berkley Owners of their contractual obligations to the NDTPA Plaintiffs - and is misrepresenting to the Berkley Owners regarding the same; and as a result, there is a strong likelihood the NDTPA Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for Sussman's unfair, deceptive, and fraudulent conduct is inadequate since Sussman continues to engage in such unfair, deceptive and fraudulent behavior.

g.    Sussman further misrepresents to the Berkley Owners that the timeshare matter has been resolved even though it was not, leading the Berkley Owners to falsely believe that they have been relieved

38

of their contractual obligations to make payments to the NDTPA Plaintiffs.

125.   In addition, NRS 119A.720 provides that any person "who knowingly participates, for consideration or with the expectation of consideration, in any plan or scheme, a purpose of which is to transfer a previously sold time share to a transferee who does not have the ability, means or intent to pay all assessments and taxes for that time share commits a false, misleading or deceptive act or practice for the purposes of …NRS 598.0915 to 598.0925, inclusive, and chapters 598A … of NRS."

126.   Sussman instructs the Berkley Owners to execute fraudulent deeds that are prepared on Sussman's behalf, purporting to transfer the Berkley Owners' respective timeshare interests to an individual serving as a straw owner (who in some cases is one of Sussman's employees), who Sussman knows does not have the ability, means, or intent to pay all assessments and taxes owed to the NDTPA Plaintiffs.

127.   Sussman continues to prepare and record fraudulent deeds despite being placed on notice by Eldorado and/or the NDTPA Plaintiffs that they have not accepted, authorized or approved the fraudulent deeds and are therefore not effective in relieving the Berkley Owners of their contractual obligations to the NDTPA Plaintiffs, and is misrepresenting to the Berkley Owners regarding the same; and as a result, there is a strong likelihood that the NDTPA Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for Sussman's unfair, deceptive, and fraudulent conduct is inadequate since Sussman continues to engage in such unfair, deceptive and fraudulent behavior.

128.    Despite having knowledge that the fraudulent deeds have not been accepted, authorized or approved, Sussman continues to accept large upfront fees from the Berkley Owners and continues to misrepresent that the execution and recording of the fraudulent deeds relieves the Berkley Owners of any further contractual obligations owed to the NDTPA Plaintiffs.

129.    Sussman's misrepresentations constitute unfair and deceptive trade practices, in that his conduct offends established public policy, is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers and businesses alike.

130.    Sussman's actions constitute unconscionable commercial practices, deception, consumer fraud, false pretenses, misrepresentation and the known concealment and misrepresentation of material facts, all in violation of NDTPA.

131.    As a result of Sussman's unfair competition, unconscionable acts and practices, consumer fraud and unfair and deceptive acts and practices, as outlined above, the consumer Berkley Owners have been damaged.  The Berkley Owners are led to believe that if they do business with Sussman, the Berkley Owners will be relieved of any further financial obligations to the NDTPA Plaintiffs.  In reality, the Berkley Owners' outstanding financial obligations place them in default with NDTPA Plaintiffs.

132.    As a direct and proximate result of Sussman's unfair competition, unconscionable acts and practices, consumer fraud and unfair and deceptive acts and practices, as outlined above, aimed at consumers in the timeshare marketplace, the NDTPA Plaintiffs have suffered substantial injury since Sussman's conduct has falsely

induced Berkley Owners to stop making payments to Nevada Associations even though they are required to do so by legally enforceable contracts. The NDTPA Plaintiffs have been damaged in the amounts due and owing to them by virtue of the Berkley Owners halting their payment of maintenance and/or tax payments at the instruction of Sussman.

133. The NDTPA Plaintiffs have a clear legal right or interest in being free from Sussman's unfair competition, unconscionable acts and practices, consumer fraud and unfair and deceptive acts and practices, as the false statements and representations set forth above have demonstrated specific past and present harm and injury to the NDTPA Plaintiffs, and will result in continued and future harm and injury to the NDTPA Plaintiffs if Sussman is not enjoined.

134. The NDTPA Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for Sussman's unfair, deceptive, and fraudulent conduct is inadequate, as Sussman continues to engage in such unfair, deceptive and fraudulent behavior despite being placed on notice that his actions are unlawful and fraudulent.

135. There is a strong likelihood that the NDTPA Plaintiffs will suffer irreparable harm on an ongoing basis since Sussman continues to engage in such false and deceptive advertising, unfair and deceptive acts and practices and fraudulent representations for the purpose of soliciting the Berkley Owners and inducing them to pay upfront retainer fees to Sussman with the false representation that the Berkley Owners may unilaterally terminate their obligations to the NDTPA Plaintiffs without any valid legal basis.

41

136. The NDTPA Plaintiffs have suffered substantial harm as a direct and proximate cause of Sussman's deceptive, misleading and unfair practices.

137. An injunction serves the public purpose.

138. As set forth above, Sussman's conduct:

    a.    is likely to mislead and is deceptive;

    b.    is an "unfair" practice because among other things the false and deceptive advertising and misrepresentations made by Susssman to solicit and induce Berkley Owners to retain Sussman and pay large upfront retainer fees and the false representation that the Berkley Owners have been relieved of any further contractually obligated payments to the NDTPA Plaintiffs based upon the execution and recording of fraudulent deeds, offend established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious;

    c.    is a false, misleading or deceptive act or practice since Sussman instructs the Berkley Owners to execute fraudulent deeds which were not requested, authorized or accepted by the NDTPA Plaintiffs, purporting to transfer the Berkley Owners' respective timeshare interests to an individual serving as a straw owner (who in some cases is one of Sussman's employees), who Sussman knows does not have the ability, means, or intent to pay all

assessments and taxes associated with the Berkley Owners' timeshares.

139.    As set forth above, Sussman's conduct was and continues to be willful in that violations occurred and continue to occur even though Sussman knows, knew or should have known that his conduct was unfair or deceptive or prohibited by law and caused the actual harm of which the NDTPA Plaintiffs complain.

140.    Pursuant to NRS 41.600(3), the NDTPA Plaintiffs are entitled to actual damages, equitable relief and attorney's fees and costs.

**WHEREFORE,** the NDTPA Plaintiffs respectfully request this Court to:

A.    Enter a preliminary injunction finding Defendant, MITCHELL REED SUSSMAN, engaged in false advertising and enjoining Sussman, his directors, officers, shareholders, attorneys, agents, servants, employees, and any other persons in active concert or participation with Sussman be forthwith preliminarily and permanently enjoined from:

a.    Engaging in false and misleading advertising and representations;

b.    Engaging in deceptive and unfair trade practices;

c.    Soliciting attorneys to prepare and record fraudulent deeds on Sussman's behalf; and

d.    Preparing and recording fraudulent deeds.

B.    Enter a permanent injunction after trial in favor of the NDTPA Plaintiffs and enjoining Defendant, MITCHELL REED SUSSMAN, his directors,

officers, shareholders, attorneys, agents, servants, employees, and any other persons in active concert or participation with them from:

a.     Engaging in false and misleading advertising and representations;

b.     Engaging in deceptive or unfair trade practices;

e.     Soliciting attorneys to prepare and record fraudulent deeds on Sussman's behalf; and

c.     Preparing and recording fraudulent deeds.

C.     Enter an Order that Defendant, MITCHELL REED SUSSMAN, be required to deliver-up (take-down) and destroy all false, misleading, and deceptive material found on the Sussman's website(s) and found in any marketing material or documentation Sussman produced or is using, and record in Nevada Public Records documentation sufficient to nullify all of the fraudulent deeds recorded on behalf of Berkley Owners;

D.     Enter an Order that Defendant, MITCHELL REED SUSSMAN, be directed to file with this Court and serve on the NDTPA Plaintiffs within fifteen days after the service of an injunction a report, in writing under oath, setting forth in detail the manner and form in which Sussman has complied with the injunction;

E.     Enter an Order requiring Defendant, MITCHELL REED SUSSMAN, to provide notice of the injunction by posting the Order on his website(s);

F.     Enter judgment for the NDTPA Plaintiffs on this claim against Defendant, MITCHELL REED SUSSMAN, declaring that Sussman violated NDTPA;

G.     Enter judgment for actual damages for violation of NDTPA, money damages, equitable relief, and an award of attorneys' fees and costs pursuant to NRS 41.9600(3); and

H.     Enter any and all other appropriate relief as the Court deems just and proper.

### COUNT V
### (DECLARATORY JUDGMENT)

141.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 72 above as if more fully set forth herein.

142.    Plaintiff brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

143.    An actual and justiciable controversy currently exists between Plaintiffs and Sussman regarding the fraudulent deeds Sussman continues to prepare and record on behalf of Berkley Owners despite Plaintiffs' continuously advising Sussman that the deeds have not been authorized, approved or accepted by Plaintiffs and therefore the Berkley Owners remain the legal owners of the timeshares and liable to Plaintiffs for their contractual obligations.

144.    Sussman admits that an actual and justiciable controversy currently exists between Sussman and Plaintiffs since his letters to Plaintiffs regarding the fraudulent deeds specifically state, "Should you dispute this question of fact, you are free to seek a declaration of rights in an appropriate court of law." *See* **Exhibit "K."**

145.    Sussman continues to prepare and record fraudulent deeds, continues to solicit other attorneys to prepare and record fraudulent deeds on Sussman's behalf and

45

*Berkley Vacation Resorts, Inc, et. al. v. Mitchell Reed Sussman*
Complaint for Damages and Injunctive Relief

continues to misrepresent to the Berkley Owners the legal significance of these deeds, for the purpose and with the intention of harming Plaintiffs.

146.     Plaintiffs have suffered substantial harm as a direct and proximate cause of the fraudulent deeds prepared and recorded by Sussman or at Sussman's direction. Specifically, Plaintiffs have been damaged in the amounts due and owing to them by virtue of the Berkley Owners' halting their payment of mortgage, maintenance, and/or tax payments to Plaintiffs at the instruction of Sussman due to the execution and recording of fraudulent deeds which are prepared by or on behalf of Sussman.

147.     Once Plaintiffs are made aware of one of Sussman's fraudulent deeds, Plaintiffs send a letter to Sussman and/or the Berkley Owners enclosing either a copy of a recorded deed properly transferring interest in the timeshare back to the Berkley Owners or a recorded Notice of Non-Acceptance,  and explaining that the deed is of no legal effect and the Berkley Owners continue to own the timeshare and remain responsible for the obligations owed in relation thereto. S*ee* **Exhibit "J**."

148.     In response, Sussman sends a letter advising that his client "[D]isavows the transfer and does not accept it nor does our client wish to be part of your time-share organization.  Please be further advised that as a matter of law, acceptance by the grantee requires that the grantee have an intention to take legal title to the property.  Our client has no such intention…." *See* **Exhibit "K**."

149.     Sussman's practice of preparing and recording fraudulent deeds and/or soliciting other attorneys to prepare and record fraudulent deeds on Sussman's behalf, purporting to transfer a Berkley Owner's timeshare interest back to Plaintiffs or to a straw

owner without obtaining Plaintiffs authorization, approval and acceptance is invalid and of no legal effect and therefore the Berkley Owners remain the legal owners of their timeshares and liable for all contractual obligations owed to Plaintiffs in relation thereto.

150.    Accordingly, and as directed by Sussman, Plaintiffs seek a declaration from the Court that Sussman's above described practices are invalid and of no legal effect and do not: (1) lawfully transfer title of the timeshares from the Berkley Owners to Plaintiffs, or a third party; or (2) relieve the Berkley Owners of their contractual obligations to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully demand judgment in their favor and against Defendant, MITCHELL REED SUSSMAN, and request the Court to declare the following:

A.     Sussman's practice of preparing and recording fraudulent deeds which purport to transfer title of timeshare interests from Berkley Owners to Plaintiffs or to a third party without Plaintiffs' knowledge, approval or acceptance is invalid and of no legal effect;

B.     The Berkley Owners remain the legal owners of their timeshares and liable for any contractual obligations owed to Plaintiffs; and

C.     For such additional and further relief this Court deems just and proper.

## COUNT VI
## (VIOLATION OF FLA. STAT. § 817.535)

151.    BVR, Lando and Palm Beach (hereinafter the "Florida Plaintiffs") reallege and reincorporate the allegations contained in paragraphs 1 through 72 above as if more fully set forth herein.

47

*Berkley Vacation Resorts, Inc, et. al. v. Mitchell Reed Sussman*
Complaint for Damages and Injunctive Relief

152.    This is an action for violation of Section 817.535, Florida Statutes.

153.    Section 817.535(8) specifically provides the Florida Plaintiffs with a civil cause of action.

154.    Sussman solicits Florida attorneys through deceptive means to review, prepare and record fraudulent deeds in Florida, on Sussman's behalf, to provide to the Berkley Owners as Proof of Performance with the false advice that the mere recording of such deeds is effective in both transferring title of the timeshares back to the Florida Plaintiffs or a third party and relieving the Berkley Owners of their contractual obligations to the Florida Plaintiffs.

155.    Sussman has the fraudulent deeds prepared and recorded for the purpose of defrauding the Berkley Owners as well as the Florida Plaintiffs.

156.    The fraudulent deeds falsely state that the Florida Plaintiffs have paid ten dollars to the grantors, receipt of which has been acknowledged, when in fact, the Florida Plaintiffs have not paid any funds to the grantors, have no knowledge of the deeds, and have neither authorized, approved or accepted the deeds.

157.    Sussman has the fraudulent deeds prepared and recorded in Florida with the knowledge that the Florida Plaintiffs are not aware of the deeds, have not authorized or accepted the deeds, and are therefore ineffective in transferring title, yet Sussman falsely instructs the Berkley Owners that as a result of recording the deeds, they no longer own the timeshares and no longer have to pay their contractual obligations to the Florida Plaintiffs, causing damages.

48

158.    Pursuant to Fla. Stat. § 817.535(8)(b)(2), the Florida Plaintiffs are entitled to actual and punitive damages, attorney's fees, and costs.

159.    Fla. Stat. §§ 817.535(8)(b)(1) and (2) further provide that the court may levy a civil penalty of $2,500 for each instrument determined to be in violation; order that the fraudulent deeds be sealed from the official records and removed from any electronic database; and temporarily and permanently enjoin Sussman from filing or directing a person to file an instrument in the official records without prior review and approval for filing by a circuit or county court judge.

160.    Contemporaneous with the filing of this Complaint, the Florida Plaintiffs have filed Notices of Lis Pendens specifically describing the instruments under challenge and the real or personal property affected by the instruments that the Florida Plaintiffs are currently aware of, which does not include every fraudulent deed recorded by or on behalf of Sussman in Florida affecting the Florida Plaintiffs.

161.    Florida Plaintiffs have further attached copies of the fraudulent deeds they are currently aware of that were prepared and/or recorded by or on behalf of Sussman in Florida.  *See* **Composite Exhibit "P."** However, the Florida Plaintiffs believe there are additional fraudulent deeds prepared and/or recorded by or on behalf of Sussman which they have not yet been made aware of and are subject to this action.

**WHEREFORE,** the Florida Plaintiffs respectfully request this Court to:

A.      Enter a preliminary injunction finding Defendant, MITCHELL REED SUSSMAN, in violation of Fla. Stat. § 817.535(2) and enjoining Sussman, his directors, officers, shareholders, attorneys, agents, servants,

employees, and any other persons in active concert or participation with
Sussman be forthwith preliminarily and permanently enjoined from:

    a.  Filing or directing any person to file an instrument in Florida's
official records purporting to transfer title of a timeshare from a
Berkley Owner to Florida Plaintiffs or a third party, without prior
review and approval for filing by a circuit or county court judge.

B.    Enter a permanent injunction after trial in favor of the Florida Plaintiffs
and enjoining Defendant, MITCHELL REED SUSSMAN, his directors,
officers, shareholders, attorneys, agents, servants, employees, and any
other persons in active concert or participation with them from:

    a.  Filing or directing any person to file an instrument in Florida's
official records purporting to transfer title of a timeshare from a
Berkley Owner to Florida Plaintiffs or a third party, without prior
review and approval for filing by a circuit or county court judge.

C.    Enter an Order that Defendant, MITCHELL REED SUSSMAN, be
required to pay the Florida Plaintiffs a civil penalty of $2,500.00 for each
instrument determined to be in violation of § 817.535(2);

D.    Enter an Order that all fraudulent deeds recorded on behalf of Defendant,
MITCHELL REED SUSSMAN, are void in their entirety and order the
fraudulent deeds sealed from the official records and removed from any
electronic database used for indexing or locating instruments in the official
records;

E.      Enter judgment for the Florida Plaintiffs on this claim against Defendant, MITCHELL REED SUSSMAN, declaring that Sussman violated Fla. Stat. § 817.535(2);

F.      Enter judgment for the Florida Plaintiffs and against Defendant, MITCHELL REED SUSSMAN, awarding actual and punitive damages and attorneys' fees and costs pursuant to Fla. Stat. § 817.535(8)(b)(2; and

G.      Enter any and all other appropriate relief as the Court deems just and proper.

## COUNT VII
### (VIOLATION OF NRS 225.084)

162.   Eldorado and BVR (hereinafter the "Nevada Plaintiffs") reallege and reincorporate the allegations contained in paragraphs 1 through 72 above as if more fully set forth herein.

163.   This is an action for violation of NRS 225.084.

164.   Nevada Plaintiffs have standing to bring this claim pursuant to NRS 225.084(3).

165.   NRS 225.084 provides, "[a] person shall not willfully file, promote the filing of, or cause to be filed, or attempt or conspire to file, promote the filing of, or cause to be filed, any record in the Office of the Secretary of State if the person has actual knowledge that (b) the record contains a false statement of material fact; or (c) is being filed in bad faith or for the purpose of harassing or defrauding any person."

166.   Sussman solicits Nevada attorneys through deceptive means to prepare and record fraudulent deeds in Nevada, on Sussman's behalf, to provide to the Berkley

51

Owners as Proof of Performance with the false advice that the mere recording of such deeds is effective in both transferring title of the timeshares back to the Nevada Plaintiffs or a third party and relieving the Berkley Owners of their contractual obligations to the Nevada Plaintiffs.

167.    Sussman prepares and records the fraudulent deeds for the purpose of defrauding the Berkley Owners as well as the Nevada Plaintiffs.

168.    The fraudulent deeds falsely state that the Nevada Plaintiffs have paid either ten or five-hundred dollars to the grantors, receipt of which has been acknowledged, when in fact, the Nevada Plaintiffs have not paid any funds to the grantors, have no knowledge of the deeds, and have neither authorized nor accepted nor approved the deeds.

169.    Sussman has the fraudulent deeds prepared and recorded in Nevada with the knowledge that the Nevada Plaintiffs have no knowledge of the deeds, have not authorized or accepted the deeds, and are therefore ineffective in transferring title - yet Sussman falsely instructs the Berkley Owners they no longer own the timeshares and no longer have to pay their contractual obligations to the Nevada Plaintiffs, causing damages.

170.    Nevada Plaintiffs have attached copies of the fraudulent deeds which they are currently aware of that were prepared and/or recorded by or on behalf of Sussman in Nevada which improperly transfer title of a timeshare interest back to Nevada Plaintiffs. *See* **Composite Exhibit "Q."**    However, the Nevada Plaintiffs believe there are

additional fraudulent deeds prepared and/or recorded by or on behalf of Sussman of which they have not yet been made aware of that are also subject to this action.

171.    Each fraudulent deed filed by or on behalf of Sussman is a separate violation of NRS 225.084.

172.    Pursuant to NRS 225.084(2)(a), the Nevada Plaintiffs are entitled to actual damages caused by each separate violation or $10,000.00 for each separate violation, whichever is greater, punitive damages, and attorneys' fees and costs.

**WHEREFORE,** the Nevada Plaintiffs respectfully request this Court to:

A.    Enter a preliminary injunction finding Defendant, MITCHELL REED SUSSMAN, in violation of NRS 225.084 and enjoining Sussman, his directors, officers, shareholders, attorneys, agents, servants, employees, and any other persons in active concert or participation with Sussman be forthwith preliminarily and permanently enjoined from:

a.    Filing or directing any person to file an instrument in Nevada's official records purporting to transfer title of a timeshare from a Berkley Owner to Nevada Plaintiffs or a third party.

B.    Enter a permanent injunction after trial in favor of the Nevada Plaintiffs and enjoining Defendant, MITCHELL REED SUSSMAN, his directors, officers, shareholders, attorneys, agents, servants, employees, and any other persons in active concert or participation with them from:

a.    Filing or directing any person to file an instrument in Florida's official records purporting to transfer title of a timeshare from a Berkley Owner to Nevada Plaintiffs or a third party.

C.      Enter an Order that Defendant, MITCHELL REED SUSSMAN, be required to pay the Nevada Plaintiffs actual damages caused by each separate violation of NRS 225.084 or $10,000 for each separate violation, whichever is greater;

D.      Enter judgment for the Florida Plaintiffs on this claim against Defendant, MITCHELL REED SUSSMAN, declaring that Sussman violated NRS 225.084;

E.      Enter judgment for the Nevada Plaintiffs and against Defendant, MITCHELL REED SUSSMAN, awarding actual and punitive damages and attorneys' fees and costs pursuant to NRS 225.084; and

F.      Enter any and all other appropriate relief as the Court deems just and proper.

## COUNT VIII
## VIOLATION OF SECTION 721.17, FLORIDA STATUTES

167.    Mizner Place, VV at Bonaventure, VV at Weston, VV at Parkway and PB Shores (hereinafter the "Florida Associations") reallege and reincorporate the allegations contained in paragraphs 1 through 72 above as if more fully set forth herein.

168.    This is an action for a violation of § 721.17, Florida Statutes.

169.    Sussman provides consumer timeshare transfer services as defined by § 721.05(52), Florida Statutes.

170.    The Florida Associations are the managing entities as defined by § 721.05(22).

171.    Section 721.17(3)(e) provides, "[n]o person shall participate, for

54

consideration or with the expectation of consideration, in a plan or scheme, a purpose of which is to transfer a consumer resale timeshare interest to a transferee that the person knows does not have the ability, means, or intent to pay all assessments and taxes associated with the consumer resale timeshare interest."

172.     Sussman instructs the Berkley Owners to execute fraudulent deeds that are prepared by Sussman or on Sussman's behalf, which were not requested, authorized or accepted by the Florida Associations, purporting to transfer the Berkley Owners' respective timeshare interests to an individual serving as a straw owner (who in some cases is one of Sussman's employees), who Sussman knows does not have the ability, means, or intent to pay all assessments and taxes associated with the Berkley Owners' timeshare.

173.     As a result of Sussman's actions described above, the Florida Associations have suffered damages.

174.     Pursuant to § 721.17(3)(g), the Florida Associations are entitled to actual damages and their reasonable attorney fees and court costs.

WHEREFORE, the Florida Associations  respectfully demand judgment in their favor and against Defendant, MITCHELL REED SUSSMAN, and request actual damages, attorneys' fees and costs and such additional and further relief this Court deems just and proper.

## <u>COUNT IX</u>
## FALSE ADVERTISING AND UNFAIR COMPETITION UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)

175.     Plaintiffs reallege and reincorporate the allegations contained in

paragraphs 1 through 72 above as if more fully set forth herein.

176.   This is a cause of action for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and is within this Court's jurisdiction.

177.   Plaintiffs are engaged in commerce within the control of Congress because they have a cognizable commercial interest in reputation or sales and fall within the zone of interest protected by 15 U.S.C. § 1125(a).  Sussman's advertised "timeshare relief" services travel in interstate commerce.

178.   Sussman purposefully inserts himself into the same marketplace in which Plaintiffs operate – the timeshare industry consisting of existing and prospective timeshare owners.  Sussman's false advertising is directed both to Plaintiffs' existing client base and to prospective owners

179.   Sussman has solicited Berkley Owners through false and misleading advertising which induce Berkley Owners to unilaterally breach their contracts with Plaintiffs without any factual or legal basis whatsoever, and which falsely induce them to stop making payments to Plaintiffs even though such payments are required by legally enforceable contracts to which the timeshare owners have no legal excuse or justification not to pay.

180.   Sussman thus advertises to Plaintiffs' existing client base in order to persuade them to do business with Sussman instead of with Plaintiffs, and to withhold trade and divert monies due and owing to Plaintiffs under the Berkley Owners' contractual obligations instead to Sussman.  Berkley Owners are falsely told about a negotiated cancellation process that can get every Berkley Owner out of their timeshare

contract without any impact to their credit and no tax consequences, when Sussman knows that: (1) there is no legitimate basis for cancellation, and (2) his practice of preparing and recording fraudulent deeds does not relieve Berkley Owners of their contractual obligations to Plaintiffs.

181.   As a result of Sussman's false and misleading advertising and misrepresentations, Berkley Owners are deceived into believing that they should pay Sussman to obtain an illusory result rather than make payments to Plaintiffs that are obligations by the very contracts that Sussman falsely claims he can easily unwind. Accordingly, Sussman is in direct competition with Plaintiffs.

182.   As to prospective owners, Sussman's advertising pollutes the marketplace and discourages prospective owners from seeking to do business with Plaintiffs by falsely representing that he has obtained cancellation of thousands of timeshare owners' timeshare contracts from all over the world, which would only be available on grounds of wrongdoing, fraud, or deceptive practices, which Sussman's false statements of his exaggerated success leads consumers to believe is rampant in the industry.

183.   Sussman further advertises that timeshare owners can cancel their contracts even if they have mortgages because he has pioneered techniques "that have resulted in timeshare companies becoming more agreeable to releasing timeshare owners from their timeshare obligations." However, the so called "technique" pioneered by Sussman is nothing more than a fraudulent scheme in which Sussman instructs timeshare owners, including Berkley Owners, to execute fraudulent deeds prepared by or on behalf of Sussman purporting to transfer their timeshare interests back to a timeshare developer,

57

association or straw owner, with the false promise that the execution and recording of the deed relieves the timeshare owner of any further contractual obligations owed in relation thereto.   In reality, the fraudulent deeds prepared and recorded by or on behalf of Sussman only serve to place the Berkley Owners' financial obligations in default with Plaintiffs and fail to achieve any cancellation of their contracts.

184.    As outlined above, Sussman made material false or misleading statements in interstate commerce in connection with commercial advertising or solicitation, specifically that:

A.    Sussman's website advertises a "technique" that Sussman has pioneered which has resulted in timeshare companies becoming more agreeable to releasing timeshare owners from their contracts when Sussman knows the technique is nothing more than a fraudulent scheme that not only fails to effectively cancel any timeshare contracts but also places timeshare owners in default of their contractual obligations.

B.    Sussman advertises on his website that he has cancelled 10,000+ timeshares when in fact the cancellations are not effective because they are based upon the execution and recording of fraudulent deeds.

C.    Sussman posts letters on his website in order to show that he has successfully obtained cancellations with Plaintiffs and other timeshare developers and associations, and can continue to do so,

when in fact the cancellations were obtained without any involvement from Sussman, were obtained prior to the timeshare entities becoming aware of Sussman's fraudulent scheme or were otherwise obtained through the use of fraudulent deeds.  As a result, the letters are misleading and falsely portray that Sussman is able to successfully obtain cancellations for his clients, including with Plaintiffs.

185.    Sussman's statements, outlined in part above, are not only literally false, but also are misleading when considered in their full context.

186.    Sussman substantially injured Plaintiffs' commercial interests by leading Berkley Owners to believe the false statements of the nature and quality of his purported services to lead them to believe that they would soon be able to avoid their contractual obligations to Plaintiffs and thus cease making those payments and divert moneys to Sussman instead as a result.

187.    Sussman's statements that he guarantees he can relieve timeshare owners of their timeshare obligations on virtually any grounds if Sussman is retained, and that he has done so for thousands of customers in the past, are false or misleading or made in bad faith.

188.    Sussman deceived, or had the capacity to deceive, consumers, thereby having a material effect on existing and prospective consumer purchasing decisions and resulting in damages to Plaintiffs.

189.    Plaintiffs suffered an injury to commercial interests based on Sussman's

misrepresentations.

190.    The actions of Sussman have been willful and make this case exceptional under 15 U.S.C. § 1117(a).

191.    By this action, Plaintiffs seek the following specific injunctive relief:

A.    Enjoining Sussman, his agents, servants, employees, attorneys and those persons in active concert or participation with Sussman from engaging in false advertising; and engaging in deceptive, misleading, and unfair trade practices relating to Plaintiffs.

B.    Requiring Sussman to take down and destroy all false, misleading, and deceptive material relating to Plaintiffs found on Sussman's websites and found in any marketing material or documentation Sussman produces or is using;

C.    Directing Sussman to file with this Court and serve on Plaintiffs within fifteen days after the service of an injunction, a report, in writing under oath, setting forth in detail the manner and form in which Sussman has complied with the injunction; and

D.    Requiring Sussman to provide notice of such injunction by posting the Order on Sussman's website.

**WHEREFORE**, Plaintiffs respectfully demand judgment in their favor and against Defendant, MITCHELL REED SUSSMAN, and request temporary and permanent injunctive relief, compensatory damages, special damages, lost profits, interest, attorneys' fees and costs, and such additional and further relief this Court deems just and proper.

*Berkley Vacation Resorts, Inc, et. al. v. Mitchell Reed Sussman*
Complaint for Damages and Injunctive Relief

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury to all issues so triable.

DATED this 4th day of October, 2018.

Respectfully submitted,

By: */s/Jennifer B. Hirschberg*
RICHARD W. EPSTEIN
(Trial Counsel)
Florida Bar No. 229091
Richard.Epstein@gmlaw.com
Maria.Salgado@gmlaw.com
JEFFREY A. BACKMAN
Florida Bar No. 662501
Jeffrey.Backman@gmlaw.com
Khia.Joseph@gmlaw.com
JENNIFER B. HIRSCHBERG
Florida Bar No. 41923
Jennifer.Hirschberg@gmlaw.com
GREENSPOON MARDER LLP
200 East Broward Boulevard
Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954.491.1120
Facsimile: 954.771.9264

31132808v1

ACTIVE: 31345437.7-03185.0544